UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | No. 17-cr-207 (KBJ) |
| D'ANGELO DUNLAP, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court at present is Defendant D'Angelo Dunlap's motion seeking compassionate release from prison pursuant to section 3582(c)(1)(A) of Title 18 of the United States Code.  (*See* Def.'s Emergency Mot. for Compassionate Release ("Def.'s Mot."), ECF No. 36; *see also* Def.'s Suppl. to Def.'s Mot. ("Def.'s Suppl."), ECF No. 38.)  Dunlap is 55 years old, and he contends that he suffers from various serious medical conditions, including "obesity, 'abnormality of [the heart's] aortic arch branch,' 'renal insufficiency,' 'diverticulitis of the colon,' 'rectal bleed[ing],' 'elevated CPK' (creatinine levels), 'positive MRSA culture' (staph infection), 'subcutaneous mass of neck,' and a history of spinal fusion that has rendered him mostly paralyzed in the right arm." (Def.'s Mot. at 7–8 (quoting Def.'s Sealed Medical Records ("Medical Records"), ECF No. 37-2, at 5, 16, 239).)[1]  Dunlap argues that "[t]hese conditions have significantly compromised [his] physical health, and also place him at a higher risk for medical complications if he were to contract Covid-19[,]" and, therefore, they constitute extraordinary and compelling circumstances that warrant "his compassionate

---

[1] Page-number citations to the documents that the parties and the Court have filed refer to the page numbers that the Court's Electronic Filing System ("ECF") automatically assigns.

1

release during this dangerous time." (*Id.* at 8.)  When Dunlap filed this motion, he was incarcerated at a state correctional facility in Baltimore, Maryland (*see id.* at 1), but he was subsequently moved to a Bureau of Prisons ("BOP") facility in Schuylkill, Pennsylvania (*see* Def.'s Suppl. at 1).

This Court has previously provided a detailed explanation of its views regarding the scope of a federal district court's statutory authority to grant a defendant's motion for compassionate release during the COVID-19 pandemic.  *See United States v. Johnson*, No. 15-cr-125, 2020 WL 3041923, at *2–5 (D.D.C. May 16, 2020) (describing the statutory framework for motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)).  The Court has applied these standards when reviewing Dunlap's motion, the Government's opposition thereto (*see* Gov't Opp'n, ECF No. 40), and Dunlap's reply (*see* Def.'s Reply, ECF No. 41).  In light of the arguments made by the parties at the August 21st motion hearing (*see* Minute Entry of Aug. 21, 2020), and for the reasons explained below, this Court concludes that there are extraordinary and compelling reasons that warrant a reduction of the term of imprisonment that the Court previously imposed with respect to Dunlap, and that Dunlap's release would not undermine the purposes of punishment that the Court evaluated when it imposed the original sentence pursuant to the factors Congress set forth in section 3553(a) of Title 18 of the United States Code.  Therefore, Dunlap's motion for compassionate release will be **GRANTED**.

**I.**

In *United States v. Johnson*, this Court detailed its understanding of section 3582(c)(1)(A)'s framework for a district court's consideration of a defendant's motion

for compassionate release; that legal analysis is incorporated by reference here. *See* 2020 WL 3041923, at *3–4; *see also id.* at *5 ("Congress's compassionate-release standards appear to require the court to evaluate, first, . . . whether there are extraordinary and compelling reasons for the reduction, as defined by the Sentencing Commission's policy statements[,] and, if so, . . . whether, despite the fact that a sentence reduction is warranted, section 3553(a)'s purposes of punishment require maintenance of the original prison term."). Under section 3582(c)(1)(A), a court must generally undertake what is essentially a three-pronged inquiry to determine: *first*, whether the defendant has exhausted all administrative remedies (and, if not, whether the statutory exhaustion requirement should be waived); *second*, whether there are extraordinary and compelling reasons that warrant a reduction of the term of imprisonment that the court previously imposed; and *third*, whether any such reduction is consistent with the factors set forth in section 3553(a), including and especially the need for the sentence imposed to ensure public safety. *See id.* at *3–5; *see also* 18 U.S.C. § 3582(c)(1)(A).

Because there is no dispute that Dunlap has, in fact, exhausted the applicable administrative requirements at this point in the procedural history of his motion, the only issues that remain to be addressed here are whether extraordinary and compelling reasons warrant a reduction in Dunlap's term of imprisonment, and whether any such reduction would be consistent with the sentencing factors set forth in section 3553(a) of Title 18 of the United States Code. *See Johnson*, 2020 WL 3041923, at *3–4.[2] The

---

[2] When Dunlap filed the instant motion for compassionate release, he was "not incarcerated at a Bureau of Prisons facility," and thus "there [was] no Bureau of Prisons warden to whom he [could] submit a request for a reduction in sentence[,]" *United States v. Barringer*, No. 13-cr-0129, 2020 WL 2557035, at *3 (D. Md. May 19, 2020), and he had been awaiting transfer to a BOP facility since this Court

Court may only grant Dunlap's motion for compassionate release and reduce Dunlap's term of imprisonment under section 3582(c)(1)(A) if both of these inquiries result in an affirmative answer. *See id*.; *see also United States v. Wade*, No. 2:99-cr-00257-3, 2020 WL 1864906, at *6–7 (C.D. Cal. Apr. 13, 2020).

**A.**

The Court is persuaded that Dunlap has serious underlying medical conditions that, when considered in conjunction with the COVID-19 pandemic, qualify as "extraordinary and compelling" reasons to justify his release. (*See* Def.'s Mot. at 13–24); *see also Johnson*, 2020 WL 3041923, at *10–11 (finding that the spread of COVID-19 and the defendant's "mental and physical health conditions[] constitute extraordinary and compelling reasons" for a sentence reduction for the purpose of section 3582(c)(1)(A) (cleaned up)).

---

sentenced him almost two years prior (*see* Minute Entry of Sept. 11, 2018). After Dunlap filed the instant motion for compassionate release in this Court, he was moved to FCI Schuylkill (a BOP facility), and on July 30, 2020, his counsel sent the warden a letter requesting that a motion for compassionate release be filed on Dunlap's behalf pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See* Def.'s Suppl. at 1–2.) Counsel's administrative request was likely a belt-and-suspenders approach to seeking compassionate release, because it would have been futile for Dunlap (who was not yet in BOP custody) to have made such an administrative request at the time he filed his compassionate release motion. *See Johnson*, 2020 WL 3041923, at *4 (explaining that section 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that can be waived on futility grounds, including when the agency does not have jurisdiction over the matter). Moreover, even though Dunlap was subsequently moved into a BOP facility, a defendant's compliance with section 3582(c)(1)(A)'s exhaustion requirement is properly assessed as of the date his motion is filed with the Court. *Cf. Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (explaining that "the jurisdiction of the court depends upon the state of things at the time of the action brought" (internal quotation marks and citation omitted)); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("[I]n considering motions to dismiss for failure to exhaust under [the Prison Litigation Reform Act], the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred."). In any event, there is no need for the Court to make a futility finding here, because more than 30 days have now elapsed since Dunlap's counsel sent the release request to the warden of FCI Schuylkill, and the parties agree that this is enough to satisfy section 3582(c)'s exhaustion requirement.

In particular, Dunlap has been diagnosed with a heart abnormality (*see, e.g.*, Medical Records at 5 (restating diagnosis of "abnormality of aortic arch branch"); *id.* at 290 (noting "abnormality of aortic branch" and that "[h]eart sounds are distant")), and he also has calcium buildup in his heart (*see id.* at 182 (reflecting that Dunlap "states that he was diagnosed with chronic calcium bui[l]d up in h[is] arteries while in DC jail"); *id.* at 264 (noting "abnormal EKG suggesting anterior ischemia")). The record further indicates that Dunlap has repeatedly sought medical attention while in custody due to intermittent chest pains. (*See, e.g.*, *id.* at 182 (noting, on April 15, 2020, "a complaint of intermittent chest pain . . . at night"); *id.* at 209 (noting, on December 4, 2019, "chest pain flaring up"); *id.* at 267 (reporting, on July 31, 2019, "chest 'tightness' . . . for 2-3 weeks"); *id.* at 285 (noting, on April 2, 2019, that Dunlap "admits that over the years he has noted interm[i]ttent chest pressure left side").) The government's opposition brief maintains that Dunlap's medical records "do not show that he suffers from" any "serious heart condition[.]" (Gov't Opp'n at 17.) But the voluminous medical records that have been submitted in connection with the instant motion for compassionate release belie that contention, including the most up-to-date records that the government itself submitted. (*See generally* Ex. 4 to Gov't Opp'n, ECF No. 40-5; *see also, e.g.*, *id.* at 3 ("Hx of Valvular Disease"); *id.* ("degenerative aortic artery" condition); *id.* ("chronic calcium build-up"); *id.* at 6 (note to follow up on "Cardiac History" and "Hypertension History"); *id.* at 15 ("Hx of Heart Disease").)

The Centers for Disease Control and Prevention ("CDC") has stated in no uncertain terms that having "serious heart conditions"—such as heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension—"increases [one's] risk

5

of severe illness from COVID-19[.]" *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (Aug. 14, 2020), https://perma.cc/3VT5-TST8. Such findings have grounded other courts' determinations that compassionate release should be granted to defendants with similar medical histories. *See, e.g.*, *United States v. Miller*, No. 06-cr-478, 2020 WL 4732129, at *3 (D. Md. Aug. 13, 2020) (finding that diagnoses of cardiac arrhythmia and possible cardiomegaly were extraordinary and compelling reasons that justified compassionate release); *United States v. Lacy*, No. 15-cr-30038, 2020 WL 2093363, at *6 (C.D. Ill. May 1, 2020) (granting compassionate release to a defendant with hypertension, obesity, and diabetes, on the grounds that "[a]ny one of these three factors alone would increase the serious risks of COVID-19").

Defense counsel has also represented that Dunlap has other preexisting medical conditions that allegedly have not been properly treated in person due to the COVID-19 pandemic. (*See* Def.'s Mot. at 20.) Specifically, defense counsel says that Dunlap was informed that "he would normally be referred for outside medical care, as he was previously, to assess whether further surgery on his colon is necessary, but that is not occurring because of Covid-19" (*id.*), and therefore Dunlap is currently choosing between "continu[ing] with the antibiotic regimen knowing it may cause long-term damage to his kidney function" (*id.*), which is already jeopardized (*see* Medical Records at 5 (diagnosing "renal insufficiency")), or "discontinu[ing] antibiotic medication and risk further infection of his colon from his diverticulitis" (Def.'s Mot. at 20), which is causing Dunlap to seek frequent care at the prison infirmary (*see* Medical Records at 89–96). Thus, it is clear to this Court that Dunlap has the kind of medical history that gives rise to legitimate concerns about a risk of serious harm if he were to

contract COVID-19.  *Cf. United States v. Dabney*, No. 20-cr-27, 2020 WL 1867750, at *1 (D.D.C. Apr. 13, 2020) (granting a motion for pretrial release and taking into account Defendant's "asthma-related difficulties while he has been incarcerated" due to the inability to obtain proper treatment in light of the COVID-19 pandemic).

The fact that Dunlap has recently been moved to a BOP facility with a low COVID-19 infection rate does not impact the Court's conclusion that Dunlap's serious underlying medical conditions, when considered in conjunction with the COVID-19 pandemic, qualify as extraordinary and compelling reasons to justify his release. Indeed, the parties here dispute the sufficiency of the BOP's COVID-19 prevention efforts.  (*Compare* Def.'s Reply at 8 ("Courts have recognized the 'obvious shortcomings' in the BOP's Action Plan.") *with* Gov't Opp'n at 5 ("The BOP staff there has taken significant steps to combat the spread of the virus in accordance with BOP's guidelines.  These steps have been remarkably successful thus far.").)  And given the extent of Dunlap's medical issues, the Court is mindful that "[a] wait and see strategy could prove too late to take preventative action."  *United States v. Brown*, No. 92-cr-345, ECF No. 93, at 10 (D.D.C. July 2, 2020).  This is especially so because there is no dispute that COVID-19 is not entirely *absent* from the incarcerated population at FCI Schuylkill, and the low number of reported cases might well be attributable to the fact that "FCI Schuylkill has not implemented widespread testing for the virus[.]"  *United States v. Croft*, No. 95-cr-496-1, 2020 WL 3871313, at *2 (E.D. Pa. July 9, 2020) (explaining that, in the absence of such a testing protocol, "we cannot be certain of the true spread of infection at the prison").  Consequently, the low number of confirmed incidences of COVID-19 in the prison population at the facility in which Dunlap is

7

currently housed "changes nothing about the inherent risks posed by carceral settings to vulnerable inmates" such as Dunlap. *United States v. Williams-Bethea*, No. 18-cr-78, 2020 WL 2848098, at *5 (S.D.N.Y. June 2, 2020).

**B.**

Section 3582(c) also requires the Court to consider the section 3553(a) factors, to the extent that they are appropriate, prior to ordering the requested sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A); *see also Johnson*, 2020 WL 3041923, at *5, and this Court finds that a reduction in Dunlap's term of imprisonment is consistent with section 3553(a) at this time. This Court has reflected on the applicable sentencing factors— including "the nature and circumstances of the offense[,]" 18 U.S.C. § 3553(a)(1), "the history and characteristics of the defendant[,]" *id.*, and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C)—and it is confident that none of these factors is an impediment to the compassionate release reduction that the current extraordinary and compelling circumstances warrant.

With respect to "the nature and circumstances" of Dunlap's offense, 18 U.S.C. § 3553(a)(1), Dunlap pled guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a). (*See* Plea Agreement, ECF No. 11, at 1.) As this Court noted at the sentencing hearing, "the commission of a bank robbery, any bank robbery, is reprehensible behavior" (Hr'g Tr., ECF No. 35, at 21:25–22:1), despite the fact that Dunlap "did not have a weapon and did not specifically threaten violence" (*id.* at 22:7– 8). This Court also determined that "the evidence supports [the] conclusion" that Dunlap was "a serious heroin addict" and that, "to fund [his] addiction [he] went,

8

essentially, where the money was." (*Id.* at 22:25–23:4.)  The government also reached that same conclusion with respect to Dunlap's sentencing (*see also* Gov't Mem. in Aid of Sentencing, ECF No. 18, at 4 ("In addition, it appears that the defendant's drug addiction rather than mere greed is what drove him to commit these crimes.")), and it specifically remarked upon the most salient observation for present purposes: that "[d]rug addiction is not an excuse for criminal conduct, of course, but in this case, it should be considered a mitigating factor[,]" (*id.* (citation omitted)).

Dunlap's history and characteristics, *see* 18 U.S.C. § 3553(a)(1), include the fact that Dunlap has "a substantial criminal history and ha[s] been in prison most of [his] adult life" (Hr'g Tr. at 25:24–25), and although the Court recognized that this is "a pattern that [] cannot [be] treat[ed] lightly" (*id.* at 27:20), the Court has previously noted how "it is significant that the prior bank robberies in [Dunlap's] past also did not involve actual violence and appear to have been related to [his] need to generate cash to fuel [his] drug addiction" (*id.* at 26:9–12).  In addition to these considerations, the Court is cognizant of Dunlap's physical characteristics—*i.e.*, his many preexisting health conditions, which appear to have worsened since the time of his sentencing and which make him especially vulnerable to COVID-19.  Therefore, the Court cannot conclude that the nature and circumstances of Dunlap's offense, or his history and characteristics, "require maintenance of the original prison term" "despite the fact that a sentence reduction is warranted[.]"  *Johnson*, 2020 WL 3041923, at *5.

Lastly, while it is clear that Dunlap was convicted of inherently dangerous offenses, the evidence before the Court at sentencing did not suggest that Dunlap posed a real danger to anyone but himself, nor was there necessarily a "need for the sentence

9

imposed . . . to protect the public from further crimes of the defendant" under the particular circumstances presented in this case.  18 U.S.C. § 3553(a)(2)(C).  (*Cf.* Gov't Opp'n at 18 (noting that *United States v. Carr*, 946 F.3d 598 (D.C. Cir. 2020) held that bank robberies "by intimidation" are "crimes of violence").)  This is largely why the Court based Dunlap's sentence primarily on punishment and deterrence grounds.  Moreover, Dunlap has made significant strides toward rehabilitating himself, as was evident during the motion hearing (*see* Hr'g Tr. of Aug. 21, 2020, at 55–58), and the Court is confident that conditions of release can be fashioned to ensure the safety of the community and to prevent Dunlap from re-offending.

In short, nothing from the sentencing record or this Court's reevaluation of the section 3553(a) factors persuades this Court that, even though extraordinary and compelling circumstances warrant a sentence reduction in this case, Dunlap nonetheless needs to be incarcerated in order to protect the public from his future crimes or to promote any other purpose of punishment.  *Cf., e.g.*, *United States v. Sears*, No. 19-cr-21, 2020 WL 3250717, at *3 (D.D.C. June 16, 2020) (holding that, "despite the fact that COVID-19 and Sears's medical condition are extraordinary and compelling reasons to grant his motion for compassionate release, section 3553(a)'s purposes of punishment require maintenance of the original prison term." (internal quotation marks and citation omitted)).

### III.

For the foregoing reasons, Dunlap has demonstrated that the COVID-19 pandemic, coupled with his serious preexisting underlying medical conditions, presents an extraordinary and compelling reason to reduce the previously imposed 57-month term of imprisonment, and that, under the circumstances presented here, his continued

incarceration is not necessary to promote the purposes of punishment in light of the section 3553(a) factors and the Sentencing Commission's stated policy concerns.

Accordingly, it is hereby

**ORDERED** that, pursuant to the authority vested in this Court to reduce a previously imposed term of imprisonment under section 3582(c)(1)(A) of Title 18 of the United States Code, Defendant's Motion for Compassionate Release (ECF No. 36) is **GRANTED**, and the term of 57 months of imprisonment as set forth in the original judgment is hereby reduced to a sentence of **TIME SERVED**. It is

**FURTHER ORDERED** that, within 72 hours of release from custody, Defendant shall report to the Probation Office of the District of Columbia to commence the 36-month concurrent terms of supervised release that the original judgment imposes. Defendant shall abide by all of the supervised release conditions set forth in the original judgment, including substance abuse testing and treatment, and educational/vocational training. It is

**FURTHER ORDERED** that the conditions of supervised release that this Court imposed in the original judgment will be **MODIFIED**, pursuant to this Court's authority under 18 U.S.C. §§ 3582(c)(1)(A) and 3583(e)(2), as follows:

(a) The Defendant is required to serve the first 180 days of his 36-month term of supervised release under home incarceration, with location monitoring technology at the discretion of the Probation Office. During this period of home incarceration, Defendant shall remain inside his residence at all times, except for medical necessities, court appearances, and any other activities specifically approved by the Court.

(b) The required conditions of supervised release that the Court previously imposed (*see* Judgment, ECF No. 33, at 5) will apply to the modified term of supervision, including substance abuse testing and treatment.

A separate Amended Judgment and Commitment Order shall issue contemporaneously with this Memorandum Opinion and Order.

Date:  September 2, 2020                                 *Ketanji Brown Jackson*
                                                              KETANJI BROWN JACKSON
                                                              United States District Judge